UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENSINGTON APARTMENT PROPERTIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>LOANVEST IX, L.P., et al.,<br><br>    Defendants. | Case No. 19-cv-05749-VC<br><br>**ORDER GRANTING MOTION FOR JUDGMENT** |

After a long, tortured, bizarre journey, this case has finally reached the point where judgment can be entered. Because the record is both voluminous and opaque, this ruling summarizes how the case finally reached its conclusion (at least at the trial court level).

**I**

The plaintiff is Kensington Apartment Properties, LLC. In 2007, Kensington borrowed $484,000 from Loanvest IX. *See* Dkt. No. 15-4 at 6; Dkt. No. 15-6 at 3. The loan was secured by a parking garage that Kensington owned, along with some other real estate. *See* Dkt. No. 15-4 at 6; Dkt. No. 15-6 at 3. Another company, Landmark West LLC, was a co-obligor on the loan. *See* Dkt. No. 15-4 at 6; Dkt. No. 15-6 at 3.

Financial troubles hit in 2010. Hamstrung by the recession, both Kensington and Landmark went bankrupt before they could pay off the loan. Dkt. No. 15-4 at 6–8. Each company initiated a separate Chapter 11 proceeding and finalized its own Chapter 11 plan. *See* Dkt. No. 15-4 at 49–52.

Loanvest had a claim for the unpaid balance under each bankruptcy plan. But the plans,

for whatever reason, did not treat the claims in the exact same way. Landmark's plan specified that interest on the claim would accrue at the 13% nondefault rate (instead of the 20% default rate), while Kensington's plan said little about which rate applied. *See* Dkt. No. 15-4 at 7–8. And only Landmark's plan reduced the effective rate by half if the claim was paid in full within a few years. *See* Dkt. No. 15-4 at 7–8.

These discrepancies prompted some litigation in 2015. Kensington believed that the friendlier interest-rate provisions in Landmark's plan also applied to Kensington's obligations. So Kensington asked the court overseeing Landmark's bankruptcy proceedings for a judgment clarifying as much. *See* Dkt. No. 15-4 at 6; *see also* Trial Brief of Kensington Apartment Properties at 4, *In re Landmark West, LLC*, No. 11-44240 (Bankr. N.D. Cal. Nov. 10, 2015), Dkt. No. 188. The court denied that request, holding that Kensington should have reopened its own bankruptcy case if it wanted such relief. *See* Dkt. No. 15-4 at 7.

The court then entered an order calculating how much Landmark owed Loanvest under Landmark's bankruptcy plan. *See* Dkt. No. 15-4 at 5–13. Based on that order, Landmark paid Loanvest $788,604.20 in 2016. This payment fully satisfied Loanvest's claim against Landmark under Landmark's plan. *See* Dkt. No. 15-4 at 10; Dkt. No. 15-7 at 10; Dkt. No. 15-32 at 3.

Around this time, Kensington was looking to sell the garage it had used to secure its loan from Loanvest. But it needed Loanvest to release its security interest in the garage first. So, after Landmark's final payment, Kensington sent Loanvest $7,500 to help pay down what Kensington still might have owed. *See* Dkt. No. 15-3 at 8; Dkt. No. 15-6 at 5.

Hoping to finally square away its obligations to Loanvest, Kensington then asked Loanvest to send a payoff demand stating how much (if anything) remained on the claim. Loanvest responded by demanding $446,852.31, plus daily interest. *See* Dkt. No. 15-7 at 9; Dkt. No. 15-19 at 7. Kensington disputed this amount. Still, eager to close the sale of the garage and to satisfy Loanvest's claim, Kensington eventually paid $447,869.90, while reserving its right to dispute the bill later. Dkt. No. 15-18 at 84–85; *see also* Dkt. No. 15-16 at 10; Dkt. No. 15-27 at 5. All told, after Landmark's final $788,604.20 payment, Kensington paid Loanvest another

2

$455,369.90 to release its interest in the parking garage.

In 2017, Kensington sued Loanvest in state court, alleging that Loanvest's conduct in connection with the payoff demand violated California law. Kensington also sued Loanvest's general partner, South Bay Real Estate Commerce Group LLC, and Loanvest's principal, George Cresson, under a theory of alter ego liability. The lawsuit included a number of claims, but all boiled down to the same argument: The defendants were wrong to insist on collecting the $455,369.90 from Kensington, and wrong to hold up the sale of the garage until Kensington paid that amount.

Loanvest removed the case to bankruptcy court on the ground that the lawsuit was related to Kensington's bankruptcy proceedings. Loanvest also filed a counterclaim against Kensington, asserting that Kensington still owed Loanvest money under Kensington's bankruptcy plan. *See* Counterclaim, *Kensington Apartment Properties, LLC v. Loanvest IX*, No. 17-4018 (Bankr. N.D. Cal. Apr. 13, 2018), Dkt. No. 46. Kensington's final $447,869.90 payment, Loanvest argued, had not fully satisfied Loanvest's claim.

Eventually, the parties filed cross-motions for summary judgment, and the bankruptcy court issued a ruling. This ruling was not binding, however, because Kensington did not consent to have the bankruptcy court adjudicate the dispute. *See* Dkt. No. 1-1; Dkt. No. 13. So the ruling was treated as a report and recommendation, which this Court adopted. Dkt. No. 32; Dkt. No. 180.

In the wake of the summary judgment ruling, several claims remained, and the parties operated on the assumption that a trial was necessary to adjudicate those claims. Unfortunately, the trial was continued several times due to a litany of factors: the COVID-19 pandemic, near-settlements that fell apart at the eleventh hour, and changes of counsel. At some point along the way, the parties consented to a bench trial. Dkt. No. 84.

Finally, the parties were set to go in July 2023. But at the pretrial conference, the Court expressed some confusion about whether any genuine factual dispute remained. It appeared to the Court from the pretrial filings that the parties were still arguing almost exclusively about

3

legal issues—some that had already been decided at summary judgment and others that neither side had presented at summary judgment. After exploring the matter carefully, everyone agreed that judgment could be entered without a trial on all claims except for one. And Kensington agreed to dismiss that remaining claim with prejudice. The next section explains the disposition of each of the claims.

## II

**A. Loanvest's Counterclaim.**

It's easiest to begin with Loanvest's counterclaim against Kensington. According to the counterclaim, Kensington still owed Loanvest money under Kensington's bankruptcy plan, even after Landmark had paid off the loan in connection with its bankruptcy plan, and even though Kensington had made an additional $447,869.90 payment.

Kensington moved for summary judgment on the counterclaim, arguing that it could not have owed more than the $447,869.90 it had paid. That's in part because, Kensington contended, it was entitled to a credit for any payments that Landmark—its co-debtor—made to Loanvest. *See* Dkt. No. 15-23. The bankruptcy court agreed, ruling as a matter of law that Landmark's $788,604.20 payment to Loanvest must be offset against whatever Kensington owed. Dkt. No. 15-32 at 3; *see also* Dkt. No. 15-27 at 10. This Court adopted that ruling. Dkt. No. 32.[1]

In their pretrial filings, the defendants continued to argue against the offset. The Court will construe this as a request to reconsider the summary judgment ruling. *See* Dkt. No. 166; Dkt. No. 175; Dkt. No. 176. The request is denied, but some further explanation is warranted to ensure that the record is clear.

Start with the underlying loan. By the terms of the loan, Kensington's and Landmark's obligations were "joint and several." Dkt. No. 15-6 at 8. Under California law, this meant three

---

[1] One small clarification: The bankruptcy judge treated Kensington's entitlement to a credit for Landmark's payments as a "fact" established under Federal Rule of Civil Procedure 56(g). Dkt. No. 15-32 at 3. But whether Kensington is entitled to a credit for these payments is not a question of fact; it is a question of law. So this Court does not adopt the bankruptcy court's factual finding under Rule 56(g).

things. First, both Kensington and Landmark were responsible for the entire loan—their liability was joint. *DKN Holdings LLC v. Faerber*, 61 Cal.4th 813, 820 (2015). Second, each could be sued separately for the entire loan—their liability was several. *Id.* But third, altogether they did not have to pay more than the total value of the debt—their liability was shared, not doubled. *See id.*

Put another way, whatever one co-debtor paid on the loan would also offset whatever the other owed. Otherwise, Loanvest would be allowed to collect the same debt more than once. So if Loanvest had already collected part of the debt from Landmark, it could recover only the remainder of the debt—not all of it—from Kensington. *See Wade v. Schrader*, 168 Cal. App. 4th 1039, 1048 (2008); *Reed v. Wilson*, 73 Cal. App. 4th 439, 444 (1999); *Brawley v. J.C. Interiors, Inc.*, 161 Cal. App. 4th 1126, 1133 (2008). And if either Kensington or Landmark paid off the loan in full, the other was no longer on the hook. *See* Cal. Civ. Code § 1474; *Grande v. Eisenhower Medical Center*, 13 Cal.5th 313, 331 (2022).

These liability rules did not change when Kensington and Landmark confirmed their bankruptcy plans. Loanvest's right to payment under each plan arises out of the same unpaid loan. Once the outstanding balance on that loan is paid off in full, Loanvest has no right to continue collecting from either debtor. *See In re Del Biaggio*, 496 B.R. 600, 603–04 (Bankr. N.D. Cal. 2012); *In re Doctors Hospital of Hyde Park, Inc.*, 494 B.R. 344, 368–73 (Bankr. N.D. Ill. 2013); *see also Ivanhoe Building & Loan Association of Newark v. Orr*, 295 U.S. 243, 246 (1935); *Federal Deposit Insurance Corporation v. Blanton*, 918 F.2d 524, 534 (5th Cir. 1990); *St. Louis Southwestern Railway Company v. Henwood*, 157 F.2d 337, 406 (8th Cir. 1946); Daniel J. Bussel, *Multiple Claims,* Ivanhoe *and Substantive Consolidation*, 17 Am. Bankr. Inst. L. Rev. 217, 227–30 (2009).

The fact that Kensington and Landmark confirmed separate plans does not alter this conclusion. What one co-debtor owes under his own bankruptcy plan might, for whatever reason, differ from what another co-debtor owes under hers. But it's still the case that, all told, the creditor may not recover more than the total value of the loan. *See In re Del Biaggio*, 496 B.R. at

5

603–04; *Ivanhoe*, 295 U.S. at 246.

The defendants argue that the rule against double recovery no longer applied once Kensington and Landmark received bankruptcy discharges. *See* Dkt. No. 15-17 at 15. But a discharge simply prevents creditors from trying to collect from the debtor outside of the bankruptcy process. *See Blixseth v. Credit Suisse*, 961 F.3d 1074, 1082–83 (9th Cir. 2020); *Zavelo v. Reeves*, 227 U.S. 625, 629 (1913). It does not allow creditors to circumvent the single-satisfaction limit—and the defendants cite no authority suggesting otherwise.

The defendants also raise four defenses to the credit. *See* Dkt. No. 166 at 9–12. But these defenses either come too late, offer too little, or miss the mark entirely. First, the defendants point to a general release that Kensington signed in 2010 waiving "any claim that accrued prior to [its February 8, 2010,] effective date." *See* Dkt. No. 166 at 9. But that argument is forfeited. Until the eve of trial, the defendants had mentioned the release only twice before—once in a sentence in its answer to the complaint, and once in a footnote at summary judgment acknowledging the release's existence. *See* Answer to First Amended Complaint ¶ 105, *Kensington Apartment Properties, LLC v. Loanvest IX*, No. 17-4018 (Bankr. N.D. Cal. April 13, 2018), Dkt. No. 45; Dkt. No. 15-3 at 5. That treatment is far too brief to count as an adequately developed argument. *See Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010). In any event, the waiver would not affect the claims brought in this case—claims that arose in 2016, after Kensington made its final payments.

Second, the defendants note that Kensington's bankruptcy schedules did not list Landmark as a co-debtor on Loanvest's claim. *See* Dkt. No. 15-4 at 14. So judicial estoppel, the defendants claim, prevents Kensington from taking a contrary position now. But this defense is forfeited too. Kensington raised the credit issue at various points during the summary judgment proceedings. But the defendants never properly presented the judicial-estoppel argument in response. On some occasions, they made only fleeting references to estoppel. *See* Dkt. No. 15-20 at 7. At other points, they failed to mention the doctrine at all. *See* Dkt. No. 15-29. Through it all, they never laid out the relevant legal test or cited any supporting authority. *See* Dkt. No. 15-12 at

8–9. That is reason enough to reject the argument. *California Pacific Bank v. Federal Deposit Insurance Corporation*, 885 F.3d 560, 570 (9th Cir. 2018).

Forfeiture aside, the judicial-estoppel defense also fails. Even assuming that Kensington had a motive not to list Landmark as a co-debtor in its bankruptcy proceeding (which is hard to imagine), applying judicial estoppel would lead to an even more unjust result: a massive windfall for Loanvest. That would not be an appropriate exercise of this Court's discretionary, equitable authority. *See In re An-Tze Cheng*, 308 B.R. 448, 459–60 (B.A.P. 9th Cir. 2004); *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267, 275–76 (9th Cir. 2013); *cf. Jhaveri v. Teitelbaum*, 176 Cal. App. 4th 740, 753–54 (2009).

Third, the defendants argue that the confirmation of Kensington's bankruptcy plan precludes Kensington from seeking a refund. *See* Dkt. No. 166 at 12. It's true that once a Chapter 11 plan is confirmed, the parties may not litigate matters that should have been raised during the confirmation proceedings. *In re Heritage Hotel Partnership I*, 160 B.R. 374, 377 (B.A.P. 9th Cir. 1993). But this rule bars only claims that Kensington could have asserted before it ever filed for bankruptcy. *See id.* It does not prevent Kensington from disputing payments made, and based on events that occurred, well after the bankruptcy plan was confirmed.

Fourth, the defendants make preclusion arguments based on the 2015 litigation involving Landmark's bankruptcy plan. *See* Dkt. No. 176 at 3, 12–16. But no part of that 2015 judgment prevents Kensington from receiving a credit for Landmark's payments. The bankruptcy court in 2015 looked only at *Landmark's* obligations under *Landmark's* plan. *See* Dkt. No. 15-4 at 6. So whether Kensington is entitled to a credit was neither actually nor necessarily decided. *See Janjua v. Neufeld*, 933 F.3d 1061, 1065–67 (9th Cir. 2019). Indeed, everyone involved in the Landmark dispute seemed to take the rule against double recovery as a given. Both sides agreed that whatever Kensington paid Loanvest under Kensington's plan offset whatever Landmark owed Loanvest under Landmark's plan. *See* Dkt. No. 15-4 at 9. So, to the extent the Landmark bankruptcy proceedings are relevant, they favor Kensington.

**B. Kensington's First and Sixth Causes of Action.**

Turning to Kensington's complaint, two claims form the crux of the lawsuit—one for breach of contract (the first cause of action), and one for money had and received (the sixth cause of action). First Amended Complaint at 10−12, 16, *Kensington Apartment Properties, LLC v. Loanvest IX*, No. 17-4018 (Bankr. N.D. Cal. Feb. 28, 2018), Dkt. No. 39. These claims are based on the assertion that Loanvest was wrong to collect as much as it did from Kensington after Landmark made its final payment.

Once the credit issue was resolved at summary judgment, at least one path to victory for Kensington was clear. If Loanvest had been made whole by Landmark's final payment, then Kensington was entitled to a refund of everything it paid after. *See* Dkt. No. 70 at 4, 6. It was not evident from the trial briefing whether this argument raised any material factual disputes—the defendants, for their part, raised only legal objections to the offset. *See* Dkt. No. 166 at 6–9 (issue and claim preclusion); Dkt. No. 176 at 7–18 (same). But Kensington, for whatever reason, never moved for summary judgment on these claims. So, at the pretrial conference, the Court asked whether Kensington could prevail on this theory without the need for a trial.

The defendants made matters simpler. They stipulated at the pretrial conference that if Kensington was entitled, as a legal matter, to a credit for Landmark's payments, then Loanvest must return whatever Kensington paid after Landmark's final payments, plus interest as required by law. The defendants, to be sure, continued to disagree with this Court's ruling that Kensington is entitled to a credit for the Landmark payments as a matter of law. And they made clear that they intend to preserve all legal arguments they had made against the credit. But as Cresson himself put it: "If the bankruptcy court was correct that … Kensington's entitled to a credit based on the Landmark payment, under no calculation did they owe any money—none." The defendants also stipulated to Kensington's theory of alter ego liability.

In sum, all parties now agree that, on the current record and considering the legal rulings made in the case, Kensington is entitled to judgment on its claims for breach of contract and for money had and received. And all parties agree that all three defendants are liable for this judgment.

In light of these stipulations, Kensington moved to enter judgment against all three defendants on the first and sixth causes of action. That motion is granted. The defendants are ordered to pay Kensington $455,369.90, plus interest.[2]

### C. Kensington's Second Cause of Action.

Kensington also brought a claim under California usury law, seeking recovery of allegedly excessive interest payments. But as various joint filings from the parties make clear, Kensington has abandoned this claim in light of intervening California Supreme Court case law. Dkt. No. 19 at 5 (citing *Wishnev v. The Northwestern Mutual Life Insurance Company*, 8 Cal.5th 199 (2019)); *see also* Dkt. No. 162. Accordingly, this claim is dismissed with prejudice. *See* Fed. R. Civ. P. 41(b); *Hells Canyon Preservation Council v. United States Forest Service*, 403 F.3d 683, 689 (9th Cir. 2005).

### D. Kensington's Third Cause of Action.

Kensington also alleged that Loanvest willfully failed to provide timely and accurate payoff demand statements, in violation of California Civil Code § 2943. Adjudication of this claim would have required at least a factual finding about whether Loanvest's conduct was willful. *See* Cal Civ. Code § 2943(4).

But the parties have stipulated that because Kensington is prevailing on the first and sixth causes of action, this cause of action will be dismissed with prejudice, with each side to bear its own costs and fees relating to this cause of action. Dkt. No. 186 at 2. The stipulated request to dismiss this claim with prejudice is granted.

### E. Kensington's Fourth and Fifth Causes of Action.

Kensington's remaining two causes of action are for conversion and accounting. Both are asserted in connection with the final payment Kensington made to Loanvest to satisfy the demand. The bankruptcy court ruled that the defendants are entitled to summary judgment on both these claims. Dkt. No. 15-27 at 7. And, as noted, this Court adopted that ruling.

---

[2] The parties also stipulated to the rate of prejudgment and postjudgment interest. *See* Dkt. No. 190.

Accordingly, judgment will be entered for the defendants on the fourth and fifth causes of action.

**IT IS SO ORDERED.**

Dated: October 3, 2023

_____
VINCE CHHABRIA
United States District Judge